IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WILLIAM RAYMOND HODGE,

    Petitioner,                      No. CIV S-04-0617 MCE DAD P

    vs.

TOM L. CAREY, et al.,

    Respondents.                 FINDINGS AND RECOMMENDATIONS

                                /

Petitioner is a state prisoner proceeding pro se with an amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondents have filed a motion to dismiss the amended petition arguing that it "fails to raise any issues cognizable in federal habeas."[1] Petitioner filed his opposition on May 26, 2005, in a document styled, "Traverse To Attory [sic] Generals [sic] Answer." No reply in support of the motion has been filed.

On October 16, 2001, in the Yuba County Superior Court and pursuant to a plea agreement, petitioner entered a plea of no contest to the charge of cruelty to an elder adult in violation of California Penal Code § 368(b)(1) and admitted to having served a prior prison term.

/////

---

[1] This is respondents' second motion to dismiss. On March 9, 2005, the court denied respondents' motion to dismiss the petition as barred by the statute of limitations.

(Pet'r's Ex.s[2], filed June 9, 2004, Ex. K at 13-14.)  In exchange for that plea charges of assault with a deadly weapon or force likely to produce great bodily injury  (Cal. Penal Code § 245(a)(1)) and making criminal threats (Cal. Penal Code § 422) were dismissed.  Pursuant to his guilty plea, on November 26, 2001, petitioner was sentenced to a determinate term of eight years, plus a one-year enhancement for the prior prison term for an aggregate sentence of nine years in state prison.  (Mot. to Dismiss (MTD) at 1-2.)  Petitioner did not appeal his conviction.[3]  (Id. at 2.)

/////

---

[2]  Court document number 9.

[3]  The unusual procedural aspects of this case were discussed at length in this court's findings and recommendation filed February 2, 2005 with respect to respondents' first motion to dismiss and will only be summarized here.  On January 16, 2002, petitioner filed a notice of appeal in the Yuba County Superior Court and requested that a certificate of probable cause be issued permitting him to challenge his no contest plea on the grounds that he was rendered incompetent to enter that plea by psychotropic medication.  The request was denied and therefore no appeal was pursued.  On March 27, 2002, petitioner was advised by the California Court of Appeal for the Third Appellate District, in response to his inquiry regarding the status of his case, that the Superior Court had denied his request for a certificate of probable cause and that if he believed he still had grounds for an appeal he should contact the Central California Appellate Program.  On April 22, 2002, petitioner was informed by the Program that his notice of appeal had been deemed inoperative because his request for a certificate of probable cause had been denied and that it was now too late to appeal from the sentence imposed in his case.  On May 2, 2002, petitioner filed in the California Court of Appeal an application for relief from default and for permission to file a belated notice of appeal.  That application was summarily denied on May 23, 2002. On October 11, 2002, the Yuba County Superior Court filed petitioner's petition for writ of habeas corpus wherein he sought relief alleging ineffective assistance of counsel and a denial of due process because his mental competency was not adequately investigated.  The petition was denied on October 23, 2002.  On November 22, 2002, petitioner filed a habeas petition with the California Court of Appeal alleging the same claims as were presented in the October 11, 2002 Superior Court petition. The petition was summarily denied on December 5, 2002.  On April 3, 2003, petitioner filed a second habeas petition with the Yuba County Superior Court re-alleging his previously presented claims along with additional claims for relief.  That petition was denied on April 9, 2003.  On April 22, 2003, petitioner filed a second habeas petition with the California Court of Appeal presenting the same claims as presented in his April 3, 2003 petition to the Superior Court.  The petition was denied on May 2, 2003.  On May 27, 2003, petitioner filed a habeas petition with the California Supreme Court.  The petition was summarily denied on February 4, 2004.  On November 25, 2003, petitioner filed another petition with the Yuba County Superior Court requesting that the court reconsider his request to withdraw his plea.  That petition was denied on December 9, 2003.  Petitioner filed his federal habeas petition on March 29, 2004.  Petitioner filed his amended petition in this court on June 9, 2004.

In his amended petition petitioner describes the events that resulted in his arrest. On June 10, 2001, petitioner and his girlfriend rode his motorcycle to his mother and stepfather's mobile home. (Am. Petition, Mem. P&A (P&A) at 3.) Petitioner was agitated because earlier that afternoon, he had a disagreement with another man and had injured his hand when he punched it through a window. (Id.) Upon arriving at his parents' home, petitioner's stepfather commented on the damaged condition of petitioner's motorcycle. (Id. at 4.) Petitioner became upset and threw his motorcycle "skull" helmet at his stepfather. (Id.) His stepfather was not hit, but as petitioner went to retrieve his helmet, he "bumped" into his stepfather. (Id.) Petitioner also hit the windshield of a car parked near the yard with his hand and shattered the glass. (Id.) As these events unfolded petitioner's mother was in the doorway of her home. (Id.) After she slammed the door shut so petitioner could not enter the home, petitioner punched his hand through the front window of the residence, then left on his motorcycle. (Id.) Petitioner was arrested the same day. (Id. at 5.) A preliminary hearing was held on June 29, 2001. (Id. at 6.) On October 16, 2001, petitioner entered a plea of no contest to cruelty to an elder adult in violation of California Penal Code § 368(b)(1).

Petitioner advances two claims in his amended petition pending before this court: (1) ineffective assistance of trial counsel; and (2) denial of his due process right not to be compelled to be a witness against himself. (Am. Petition at 5.) As to the first claim, petitioner contends that his trial counsel did not discuss a defense strategy with petitioner prior to his preliminary hearing on June 29, 2001, did not conduct discovery to prepare and develop a defense to the charges and failed to provide vigorous representation during the preliminary hearing and at sentencing. (Id., P&A at 6-9, 14, 20.) Specifically, petitioner contends that his counsel did not interview potential witnesses, including his girlfriend Susan Goodwyn, and failed to pursue discrepancies in the police report,[4] take photographs of the crime scene, obtain

---

[4] Petitioner points to the lack of blood on or damage to the door of his parents' residence as indication of such discrepancies.

3

evidence of petitioner's alcoholism and psychological disorder, investigate whether there were mitigating factors, and investigate petitioner's mistreatment as a child for purposes of mitigation. (Id., P&A at 9, 15.)  Despite the lack of investigation and effort to develop a defense, counsel allegedly advised petitioner that pleading guilty was in his best interest. (Id., P&A at 13.)

        As to his second claim, petitioner makes the following contentions:  petitioner's waiver of his Miranda rights during his interrogation by sheriff deputies was invalid because he was under the influence of alcohol, the prosecution withheld information from the defense, petitioner's mental competence was diminished throughout the proceedings before the trial court, the conclusions reached as a result of petitioner's competency examination were false, and the Marsden hearing was invalid. (Am. Petition at 5.)  Petitioner's memorandum of points and authorities provides only some clarification with respect to these claims.  As to the "information" allegedly withheld from the defense, petitioner argues that the sheriff deputies did not "follow up" on petitioner's statement that he had cut his hand on a glass window before the confrontation with his stepfather, that officers did not immediately detain petitioner after the incident with his mother and stepfather, no tetanus evaluation was performed on his injured hand, no follow-up interrogation was conducted by sheriff deputies, officers failed to note in their reports that there was no blood on the door of his parents' residence, and petitioner's bloody shoe was not taken as evidence. (Id., P&A at 22.)  Petitioner also argues that the district attorney withheld from the defense information that petitioner's motorcycle was damaged, that prosecution witnesses could not see petitioner kicking the door to his parents' residence because they were indoors, an emergency room report showing that no tetanus shot was administered and that petitioner's hand was not cut on a metal shed, and photographs of the door to his parents' residence. (Id. at 23.)  As to his mental competence at the time he entered his guilty plea, petitioner only reasserts that because his dosage of Haldol was excessive, he was "unable to fully comprehend discovery, assistance of counsel and pre-trial issues. . . . [and] was not adequately capable of analytical and structural decisions." (Id. at 24.)  Petitioner also challenges the report prepared by a psychologist

4

for his competency hearing.[5] (Id. at 25, 28.) Petitioner argues that the "Relationship History" set forth in that report describing his marriages, dissolutions and children is inaccurate and consideration of that information violated his right to due process because the information was provided by third parties. (Id.) In addition, petitioner contends that the report is invalid because the psychologist along with petitioner completed the three written tests administered as part of the evaluation, rather than allowing petitioner to work on the tests himself in a proper setting and with sufficient time. (Id. at 28.) As to his Marsden hearing, petitioner argues that although he had difficulty explaining how his attorney was not providing adequate representation, the trial court should have assisted petitioner to ensure there was no miscarriage of justice. (Id. at 27.)

## MOTION TO DISMISS

I. Respondents' Arguments

      Respondents argue that petitioner's claims are not cognizable because by entering his plea pursuant to a plea agreement petitioner "essentially waives any constitutional deficiency which occurred prior to the plea." (MTD at 3.) Respondents recognize that a guilty plea may be collaterally attacked if a petitioner alleges that the plea was rendered involuntary due to ineffective assistance of counsel and if the claimed ineffectiveness relates to the plea advice. (Id. at 4.) Respondents argue that here, however, petitioner does not claim that counsel's advice with respect to the entry of plea was ineffective. (Id.) Respondents also argue that on the merits petitioner's ineffective assistance of counsel claim fails because the plea agreement was favorable to petitioner in that by pleading no contest to the cruelty to an elder adult charge he avoided trial on two additional felony charges which could have resulted in the imposition of a 25-year to life prison sentence under the California's Three Strikes Law. (Id. at 3-4.)

      Respondents also challenge petitioner's claim that he was over-medicated with Haldol rendering him unable to assist his counsel or make appropriate decisions during his trial

---

[5] The report is included with petitioner's exhibits. See Exhibits of Pre-Trial Proceedings, filed on June 9, 2004, Exhibit L. (Court document number 9.)

5

court proceedings. (Id. at 4.) Respondents argue that not only is this claim unexhausted it lacks any merit. (MTD at 4-6.) In this regard respondents point out, once again, that petitioner's decision to enter the plea agreement was an intelligent one since pursuant to that agreement he was sentenced to a 9-year determinate prison term rather than to the 25-to-life sentence he could have faced if convicted at trial . (Id. at 6.) Moreover, respondents cite to the transcripts of petitioner's change of plea hearing in which he acknowledged that he understood the consequences of his plea, understood his constitutional rights and was entering his plea freely and voluntarily as well as the psychologist report prepared for the competency hearing in arguing that the record clearly establishes that petitioner understood the proceedings and that his no contest plea was entered intelligently and voluntarily. (Id.)

II. Petitioner's Opposition

Petitioner argues that in addition to the claims specifically stated in his habeas petition, he is also claiming that the guilty plea was not "intelligently or voluntarily" made. (Traverse To Attorney Generals Answer (Opp'n) at 2.) Petitioner contends that such a claim can be implied from the prayer for relief in his amended petition requesting the withdrawal of his guilty plea and by assertions in both his amended petition and in his petition filed before the California Supreme Court that his plea was not intelligently or voluntarily made. (Id.)

As for the ineffective assistance of counsel claim, petitioner argues that his "attorney's incompetence and conduct are diretly [sic] responsible for my having to plaed [sic] guilty." (Id. at 4.) Petitioner again describes the incident which resulted in his arrest and alleged discrepancies in the police report which he argues should have been investigated by his counsel. (Id. at 3-4.) Petitioner argues that if his counsel had been competent, he would have realized that the charges against petitioner could have easily been defended against and, in any event, amounted to no more than a misdemeanor offense. (Id. at 4.)

Petitioner argues that his claim of being over-medicated at the time of his entry of the no-contest plea has been exhausted. (Id. at 5.) In this regard, petitioner has attached a copy

of the ninth claim from his habeas petition to the California Supreme Court.[6] (Opp'n, Ex. C at 1.) Therein the claim was described as follows: "Denied Due Process by Yuba County Jail psychiatrist, Dr. Zil when he prescribed and continued to increase dose of Medication 'Haldol.'" (Id.) In the section of that petition calling for "supporting facts," petitioner described how his Haldol dosage was increased and contends that his mental condition improved when he stopped taking the medication. (Id.) As to how the medication impacted his competency to assist in his defense, petitioner states: "This medication is very strong and diminished my mental ability to assist in my defense in a rational manner." (Id.)

Next, petitioner argues that his no contest plea was not voluntarily made because he accepted the plea offer after the judge denied his request for a new attorney and when it became clear that his attorney was not prepared for trial. (Id. at 6-7.) As to respondents' argument that the plea bargain was beneficial to him because he faced a possible 25-to-life sentence, petitioner argues that it is unlikely that the criminal case against him would have even gone forward to trial if he had refused the plea bargain. (Id. at 8.) Lastly, petitioner challenges his mental competency examination, asking the court to review the medical records attached to his amended petition. (Id.; Am. Petition, Ex. M.)

III. Analysis

Respondents argue that petitioner's habeas petition fails to raise cognizable claims for habeas relief. Amended Rule 4 of the Rules Governing § 2254 Cases "reflects that the response to a habeas petition may be a motion." Rule 4, Fed. R. Governing § 2254 Cases, Advisory Committee Notes, 2004 Amendments. Summary dismissal pursuant to amended Rule 4 is authorized only "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court. . . ." Therefore, in considering respondents'

/////

---

[6] See also Resp't's documents, lodged May 15, 2005, titled "May 27, 2003, Petition For Writ Of Habeas Corpus In The California Supreme Court.

motion to dismiss the court will not look beyond petitioner's amended petition, memorandum of points and authorities and exhibits.

    A.  <u>Ineffective Assistance of Counsel Claim</u>

The Sixth Amendment guarantees the effective assistance of counsel. The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). To support a claim of ineffective assistance of counsel, a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. <u>See</u> <u>Strickland</u>, 466 U.S. at 687-88. After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. <u>Id.</u> at 690; <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003). Second, a petitioner must establish that he was prejudiced by counsel's deficient performance. <u>Strickland</u>, 466 U.S. at 693-94. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." <u>Id.</u> <u>See</u> <u>also</u> <u>Williams</u>, 529 U.S. at 391-92; <u>Laboa v. Calderon</u>, 224 F.3d 972, 981 (9th Cir. 2000). A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." <u>Pizzuto v. Arave</u>, 280 F.3d 949, 955 (9th Cir. 2002) (quoting <u>Strickland</u>, 466 U.S. at 697).

In assessing an ineffective assistance of counsel claim "[t]here is a strong presumption that counsel's performance falls within the 'wide range of professional assistance.'" <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 381 (1986) (quoting <u>Strickland</u>, 466 U.S. at 689). There is in addition a strong presumption that counsel "exercised acceptable professional judgment in

all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).  However, that deference "is predicated on counsel's performance of sufficient investigation and preparation to make reasonably informed, reasonably sound judgments." Mayfield v. Woodford, 270 F.3d 915, 927 (9th Cir. 2001) (en banc)).

        Counsel's actions in advising petitioner to enter into the plea agreement occurred prior to the entry of petitioner's plea. Petitioner may not raise claims of deprivation of his constitutional rights that occurred prior to his guilty plea. Tollett v. Henderson, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."); see also Ortberg v. Moody, 961 F.2d 135, 137 (9th Cir. 1992) ("petitioner's nolo contendere plea precludes him from challenging alleged constitutional violations that occurred prior to the entry of that plea"); Hudson v. Moran, 760 F.2d 1027, 1029-30 (9th Cir. 1985) (voluntary and intelligent guilty plea precludes federal habeas relief based upon "independent claims" of pre-plea constitutional violations). In his amended petition, petitioner does not challenge his attorney's advice in connection with his entry of his no contest plea.  Instead, petitioner claims that counsel was ineffective because he had failed to conduct investigation or develop a defense.  In his opposition to the pending motion to dismiss, petitioner argues that his offense conduct constituted nothing more than a misdemeanor and that the charges could have been defended if his attorney had been competent. (Opp'n at 4.)  Petitioner waived these ineffective assistance of counsel claims when he chose to enter his no contest plea.[7]

/////

---

[7] The same principles bar any claim by petitioner with respect to alleged abuses committed by sheriff deputies, the district attorney and the trial court. In addition to being conclusory allegations, all of these misconduct claims were waived when petitioner chose to accept the plea bargain and enter his change of plea. Tollett, 411 U.S. at 267; Ortberg, 961 F.2d at 137-38.  Accordingly, any misconduct claims should be summarily dismissed as well.

1    It is true that a criminal defendant may attack the voluntary and intelligent
character of the guilty plea by showing that he received incompetent advice from counsel in
connection with entry of the plea. Tollett, 411 U.S. at 266-67 (a defendant who pleads guilty
upon the advice of counsel may only attack the voluntary and intelligent character of the guilty
plea by showing that the advice he received from counsel was "not within the range of
competence demanded of attorneys in criminal cases[.]") (citing McMann v. Richardson, 397
U.S. 759, 771 (1970)); Mitchell v. Superior Court for City of Santa Clara, 632 F.2d 767, 769-70
(9th Cir.1980).

Even assuming arguendo that petitioner is attacking the voluntary and intelligent
character of his guilty plea by alleging that the advice he received from counsel to plead guilty
was flawed, his claim lacks merit and he should be denied relief. In order to demonstrate
ineffective assistance of counsel in the context of a challenge to a guilty plea, the petitioner must
show that counsel's advice fell below an objective standard of reasonableness as well as
reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would
have insisted on going to trial. Strickland, 466 U.S. at 688; Hill v. Lockhart, 474 U.S. 52, 58-59,
106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Petitioner has not made either showing in this case

According to petitioner, it was his attorney's incompetence that compelled him to
enter his plea. (Opp'n at 4.) The fact that petitioner was not confident of his attorney's abilities
or readiness for trial, does not relate to the voluntary and intelligent nature of his plea. Indeed, in
Tollett, the United States Supreme Court rejected a similar argument. In that case, the defendant
argued that counsel had not pursued a factual inquiry which would have uncovered a possible
constitutional infirmity in his prosecution. The Supreme Court described the role of counsel as
follows:

> The principal value of counsel to the accused in a criminal
> prosecution often does not lie in counsel's ability to recite a list of
> possible defenses in the abstract, nor in his ability, if time
> permitted, to amass a large quantum of factual data and inform the
> defendant of it. Counsel's concern is the faithful representation of

> the interest of his client and such representation frequently involves highly practical considerations as well as specialized knowledge of the law.  Often the interests of the accused are not advanced by challenges that would only delay the inevitable date of prosecution, or by contesting all guilt.  A prospect of plea bargaining, the expectation or hope of a lesser sentence, or the convincing nature of the evidence against the accused are considerations that might well suggest the advisability of a guilty plea. . . .

411 U.S. at 267-68 (internal citations omitted).

Here, petitioner indicates that his counsel advised him that accepting the plea agreement was in his best interest.  There is nothing in the record demonstrating that this advice was not "'within the range of competence demanded of attorneys in criminal cases.'" Id. at 266 (quoting McMann, 397 U.S. at 771).  Moreover, petitioner's plea agreement obtained for him an aggregate sentence of nine years in state prison.  Absent that plea agreement petitioner was facing two additional felony charges.  Given his prior record, a guilty verdict at trial would have rendered petitioner eligible for a sentence of 25 years to life in prison under California's Three Strikes Law.  In addition, the evidence against petitioner was strong.  Both his mother and his step-father gave compelling testimony against petitioner at the preliminary examination.  (July 17, 2001 Court Transcript, Court Docket No. 19.)  Finally, the record reflects that petitioner acknowledged that his plea was made voluntarily and intelligently at the time he entered that plea:.

> THE COURT: Other than what we've talked about here in court, Counts II and III will be dismissed and the district attorney will not allege a second strike prior, has anybody make [sic] you any other promises to get you to do this?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Anybody threaten you in any fashion if you didn't do it, something worse would happen?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Have you had enough time to discuss the facts of the case, including any defenses you think you might have with Mr. Wirhschafter [petitioner's attorney]?

11

1         THE DEFENDANT: Yes, sir, I have.

2         THE COURT: And I know, based on our prior discussion, you are not happy with what you are doing, but you are doing this because in your mind it makes better sense to take this deal than to run the risk of going to trial?

        THE DEFENDANT: That's why I'm doing it.

(Pet'r's Ex.s, Ex. K at 12-13.)

        These facts preclude a reasonable claim that petitioner would have insisted on going to trial had he received advice from an attorney in which he had more confidence. Certainly his counsel's advice to accept this favorable plea agreement was within the wide range of competence demanded of attorneys in criminal cases. Thus, after reviewing this record, the undersigned finds that petitioner's ineffective assistance of counsel claim attacks matters not relating to his entry of plea and that petitioner's plea was made voluntarily and knowingly. Petitioner's ineffective assistance of counsel claim should be summarily dismissed. See O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (holding that Rule 4 explicitly allows the court to dismiss a claim if it plainly appears from the face of the petition that the petitioner is not entitled to relief).

    B. Competency Claim

        As indicated above, respondents argue that to the extent petitioner is claiming that he plea was rendered involuntary because he was over-medicated with Haldol and incompetent at the time it was entered, such a claim is unexhausted. Petitioner has presented some evidence that such a claim was presented to the California Supreme Court as "claim nine" of an unspecified petition. In any event, without waiving exhaustion respondent has asked the court to deny relief as to this claim on the merits. (MTD at 5.) Accordingly, the undersigned will assume for the sake of argument that this claim has been exhausted. Below, the court considers whether the claim should nonetheless be summarily dismissed.

/////

A defendant's plea of guilty is valid if the defendant is competent to stand trial and makes a knowing and voluntary waiver of his constitutional rights. Godinez v. Moran, 509 U.S. 389, 400 (1993); Brady, 397 U.S. at 748. The test for competency is "whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." Godinez, 509 U.S. at 396 (quoting Dusky v. United States, 362 U.S. 402, 402 (1960) (per curiam)). A reviewing court should determine whether a defendant has "the ability to make a reasoned choice among the alternatives presented to him." Miles v. Stainer, 108 F.3d 1109, 1112 (9th Cir. 1997) (quoting Chavez v. United States, 656 F.2d 512, 518 (9th Cir. 1981)). The burden of establishing mental incompetence rests with the petitioner. Medina v. California, 505 U.S. 437, 446-48 (1992); Boag, 769 F.2d at 1343-44; McKinney v. United States, 487 F.2d 948, 949 (9th Cir. 1973).

The due process clause requires a state trial court to inquire into a defendant's competency sua sponte if a reasonable judge would be expected to have a bona fide doubt as to the defendant's competence. Pate v. Robinson, 383 U.S. 375, 385 (1966); Blazak v. Ricketts, 1 F.3d 891, 893 & n.1 (9th Cir. 1993); United States v. Lewis, 991 F.2d 524, 527 (9th Cir. 1993); Chavez v. United States, 656 F.2d 512, 515-17 (9th Cir. 1981). In resolving this issue, this court examines only the information that was before the state trial court at the time of the relevant proceedings. Amaya-Ruiz v. Stewart, 121 F.3d 486, 489 (9th Cir. 1997).

The record must affirmatively show that a criminal defendant's guilty plea is intelligent and voluntary.[8] Boykin v. Alabama, 395 U.S. 238, 243-44 (1969). "The voluntariness of [a petitioner's] guilty plea can be determined only by considering all of the relevant circumstances surrounding it." Brady, 397 U.S. at 749. As noted above, a defendant's

---

[8] Whereas competency involves a defendant's general ability to understand the proceedings against him, "'[t]he purpose of the 'knowing and voluntary' inquiry, by contrast, is to determine whether the defendant actually does understand the significance and consequences of a particular decision.'" Godinez, 509 U.S. at 401 n.12.

representations at the time of his guilty plea "carry a strong presumption of verity." Blackledge, 431 U.S. at 74. See also United States v. Kaczynski, 239 F.3d 1108, 1115 (9th Cir. 2001) (in assessing the voluntariness of a plea "substantial weight" must be given to the defendant's in-court statements), cert. denied 535 U.S.933 (2002); United States v. Timbana, 222 F.3d 688, 702-04 (9th Cir. 2000) (same).

In his memorandum of points and authorities, petitioner merely argues that because he taking Haldol, he was "unable to fully comprehend discovery, assistance of counsel and pre-trial issues. . . . [and] was not adequately capable of analytical and structural decisions." (Am. Petition, P&A at 24.) This conclusory argument is contradicted by petitioner's statements both at the hearing when he entered his plea and in connection with his mental competency examination. At the change of plea hearing petitioner answered the questions put to him in rational manner and told the court that although he was taking Haldol, he understood the nature of the proceedings.

> THE COURT: Are you currently under the influence of any drug, narcotic or alcohol?
>
> THE DEFENDANT: No, sir, I'm not.
>
> THE COURT: Are you taking any kind of medication now?
>
> THE DEFENDANT: Yeah. I take psych meds in the county jail.
>
> THE COURT: What kind of medicines are you taking?
>
> THE DEFENDANT: Haldol and Benadryl.
>
> THE COURT: Are you taking it in accordance with the doctor's direction?
>
> THE DEFENDANT: Yes. I take it at night, every night.
>
> THE COURT: You are not taking too much or too little; are you taking what the doctor told you?
>
> THE DEFENDANT: Exactly what he prescribed.
>
> THE COURT: Do you believe you understand what is going on today?

THE DEFENDANT: I believe so.

(Pet'r's Ex.s, Ex. K at 11-12.)

Moreover, at an earlier stage of the proceedings a competency examination of petitioner was conducted. In connection with that examination, a psychologist concluded that petitioner was able to understand the nature and purpose of the proceedings taken against him, was able to assist counsel in his defense and in a rational manner and was mentally competent. (Pet'r's Ex.s.[9], Ex. L at 23-24.)[10]

Thus, petitioner's current claim that he was not competent when he entered the guilty plea is simply unsupported by any evidence in the record. Accordingly, this claim should be summarily dismissed.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Respondents' motion to dismiss, filed on May 9, 2005, be granted; and

2. This action be summarily dismissed. See Rule 4, Rules Governing § 2254 Cases.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

---

[9] Court document number 9.

[10] The amended petition presents a claim challenging the competency examination itself on due process grounds. In this regard, petitioner challenges the accuracy of his family/marital history appearing in a psychological report and the manner in which he was administered psychological tests as part of that examination. The court notes that the family/marital history and written tests were not the only data which the psychologist reviewed in reaching his conclusion that petitioner was competent. (Pet'r's Ex.s., Ex. L at 2-3.) The psychologist also reviewed the police report, court documents, medical and mental health records and interviewed petitioner himself. In any event, there is no support in the record for petitioner's conclusory claim that his due process right not to be compelled to be a witness against himself was violated in connection with his competency examination. This claim should therefore be summarily rejected.

1  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
2  shall be served and filed within five days after service of the objections.  The parties are advised
3  that failure to file objections within the specified time may waive the right to appeal the District
4  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
5  DATED: January 31, 2006.

                                           /s/ Dale A. Drozd
                                           DALE A. DROZD
                                           UNITED STATES MAGISTRATE JUDGE

DAD:4
hodg0617.mtd2